IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY MADDEN,

                Plaintiff,                  OPINION AND ORDER

  v.

                                            18-cv-605-bbc

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

---

      Plaintiff Gary Madden is seeking review of a final decision by defendant Commissioner of Social Security denying plaintiff's claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Dkt. #8. (I have amended the caption to reflect the fact that the new Commissioner of Social Security is Andrew M. Saul.) Plaintiff contends that the administrative law judge who decided the case erred in failing to assess adequate limitations for him with respect to handling, fingering and balancing; inadequately assessing the psychological evaluation of an examining physician; and failing to explain the inclusion of a 10 percent off-task limitation in the residual functional capacity assessment. For the reasons explained below, I find that the administrative law judge did not err in reaching his decision. Accordingly, plaintiff's claim will be denied.

      The following facts are drawn from the administrative record (AR).

FACTS

A. Social Security Applications and Administrative Proceedings

Plaintiff Gary Madden filed applications for disability insurance benefits on May 1, 2014, contending that he had been disabled since April 11, 2014 because of a variety of conditions, including chronic pain, neuropathy, restless leg syndrome and concentration and comprehension problems. AR 50, 53-56. He was born on October 10, 1976, making him 37 years old when he applied for benefits. AR 62. Plaintiff completed the 12th grade and has prior work experience as a window assembler, woodworking machine off-bearer, nailing machine operator and grinding machine operator. AR 59, 62.

On May 2, 2017, Administrative Law Judge Thomas Springer held a hearing at which plaintiff, plaintiff's family medicine physician and a vocational expert testified. AR 50. Plaintiff was represented by counsel at the hearing. In a written decision issued on July 3, 2017, the administrative law judge concluded that plaintiff was severely impaired by complex regional pain syndrome, peripheral neuropathy and residuals from a hiatal hernia repair. AR 52. Although he noted that a psychological evaluation performed by Dr. Nanette Matthews suggested that plaintiff had a somatoform disorder, he found the physician's findings to be indefinite and determined that the following evidence in the record showed that plaintiff did not have a severe psychological impairment:

- Neurologist Dr. Loren Rolak noted in August 2013 that plaintiff's orientation, memory, recall, concentration and attention span were normal. AR 736.

- In November 2015, Dr. Raymond Hartke noted that plaintiff did not exhibit any evidence of depression, anxiety or agitation; was orientated to time, place and person; and had normal insight and judgment. AR 710.

- Although plaintiff reported undergoing some counseling, there were no records corroborating this report.

AR 61.

The administrative law judge found that plaintiff retained the residual functional capacity to perform sedentary work with the following limitations: using an assistive device in one hand; occasional repetitive operation of foot controls; no climbing ladders, scaffolding, ramps or stairs; no crawling; occasional balancing, stooping, kneeling, crouching and exposure to vibration and workplace hazards; being off-task up to 10 percent of each workday; and one unscheduled absence every other month. AR 55. (In reaching his decision, the administrative law judge made several specific findings with respect to the medical evidence that I will discuss in more detail below.)

The administrative law judge determined that plaintiff had no past relevant work. AR 62. Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on the residual functional capacity assessment, the administrative law judge found that jobs existed in significant numbers in the national economy that plaintiff could perform, including order clerk, office helper and assembler. AR 63.

B. <u>Relevant Medical Evidence</u>

1. <u>Dr. Kenechi Anuligo</u>

Since about 2013, Dr. Anuligo has treated plaintiff every two to three months. AR 101, 699. Plaintiff has seen several providers and specialists but his diagnosis is not clear. AR 102, 699. According to Dr. Anuligo, plaintiff has some sort of neuropathy with physical evidence of motor loss, calf muscle weakness, weak upper extremities, severely-impaired balance and over-sensitivity to heat and cold. AR 699. The most consistent diagnosis Dr. Anuligo has come up with is complex regional pain syndrome. AR 102.

At an appointment on June 26, 2014, plaintiff was prescribed wrist braces for moderate to severe complaints of weak grip strength and wrist numbness radiating into his fingers. AR 517-18. As of July 2014, the braces had not appreciably improved his symptoms. AR 679.

On October 14, 2014, Dr. Anuligo completed a medical source statement in which he stated that plaintiff had pushing and pulling limitations with all extremities; could stand or walk less than two hours in a workday; had severe postural instability and muscle atrophy in his legs; could occasionally kneel, reach in most directions, handle and finger; and could not climb, balance, crouch, crawl, stoop, reach overhead or feel. He found that plaintiff had no difficulties sitting but should be using a cane or walker when ambulating. AR 430-33.

In a physical residual functional capacity assessment form dated June 17, 2016, Dr. Anuligo noted that plaintiff did not have the strength in his lower extremities to stand or walk for more than 30 minutes at a time; had limited ability to push or pull because he "may

4

fatigue after 30 minutes to 1 hour"; could not balance, climb, stoop, kneel, crouch or crawl, as evidenced by muscle atrophy and weakened grip and motor strength on examination; and had limited ability to handle, finger and feel because he fatigues easily and has decreased sensation in most of his body, particularly on the left side. AR 700-07.

At the administrative hearing, Dr. Anuligo testified that plaintiff's grip strength is weak and his muscles are atrophied, but he did not offer any opinion about plaintiff's functional limitations. AR 105.

2. Dr. A. Neil Johnson

At the request of the agency, Dr. Johnson performed a physical examination of plaintiff on June 27, 2015. Plaintiff reported severe pain in his calves and arms, horrible balance, weakness and atrophy in his leg muscles, an inability to walk very far (possibly 100 feet) and an ability to stand for 20 minutes and sit for 30 minutes at a time. Plaintiff stated that he could use his hands to button, pick up a coin, write and use silverware but could not open a tight lid or use a hammer or screwdriver very well. AR 659. On examination, Dr. Johnson noted a positive Romberg sign (loss of balance), numbness in plaintiff's right forearm extending into his fingers, weakness (rated a three out of five) in plaintiff's legs and feet, weakness and pain when plaintiff used his arms and legs, abnormal position sense on the right foot and severe ataxia (lack of muscle control) in plaintiff's lower extremities. He recommended that plaintiff avoid heights, inclines and uneven surfaces and not work around machinery. AR 660-61.

5

3. Dr. Nanette Matthews

On June 9, 2016, Dr. Matthews performed a psychological evaluation of plaintiff to assess whether he would be a good candidate for a spinal cord stimulator trial. AR 671. She noted that testing revealed no psychological dysfunction but that it suggested that plaintiff has difficulty managing routine affairs, a poor memory, concentration problems and an inability to make decisions. AR 673-74. Dr. Matthews diagnosed provisional pain disorder and added that conversion and personality disorders should be ruled out. AR 674. In light of what Dr. Matthews believed to be a strong psychological component to plaintiff's physical symptom pattern (specifically pain), she did not recommend a spinal cord stimulator for plaintiff. AR 675.

OPINION

In reviewing an administrative law judge's decision, the court must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review

> does not mean that we scour the record for supportive evidence or wrack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination.

Id. See also Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (administrative law judge need not discuss every piece of evidence but "must build a logical bridge from evidence to

6

conclusion"); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Although an administrative law judge need not rely on a certain physician's opinion to assess a claimant's residual functional capacity, there must be some evidence supporting his findings. Social Security Ruling 96-8p. With respect to the opinion of a treating physician, an administrative law judge is required to give the opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R § 404.1527(c)(2); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011). The administrative law judge must give good reasons for the weight assigned to a treating physician's opinion. Bates v. Colvin, 736 F.3d 1093, 1101 (7th Cir. 2013); Roddy v. Astrue, 705 F.3d 631, 636-37 (7th Cir. 2013). If the administrative law judge chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009). See also 20 C.F.R. § 404.1527(c).

A. Upper Extemity Limitations

Plaintiff criticizes the administrative law judge for not including any limitations with respect to fingering or handling in either his residual functional capacity assessment or his hypothetical to the vocational expert. In support of this point, he cites Dr. Johnson's 2015 note that he has weakness and pain with the use of his arms and Dr. Anuligo's findings that he has limited abilities in handling and fingering and a weak grip strength. However, the administrative law judge considered that evidence and provided good reasons for not assessing any handling or fingering limitations. He explained that he did not include any manipulative restrictions because the evidence did not consistently demonstrate the need for such limitations. AR 57, 61. For example, plaintiff's 2011 EMG and nerve conduction studies were unremarkable. AR 415-16. Plaintiff reported moderate to severe wrist pain in June and July 2014, and Dr. Anuligo noted that he had some limitations (most likely occasional) in handling and fingering in 2014 and 2016. However, plaintiff told Dr. Johnson in 2015 that he could pick up buttons and coins, write and use silverware, and Dr. Johnson did not assess any handling or fingering limitations for plaintiff at that time. Without more, I cannot conclude that the administrative law judge acted unreasonably in concluding that the record did not support manipulative limitations for plaintiff.

B. Lower Extremity Limitations

In his residual functional capacity assessment and hypothetical to the vocational expert, the administrative law judge limited plaintiff to the use of an assistive device in one hand, but he did not say anything about a sit and stand option. Upon questioning from

8

plaintiff's attorney, the vocational expert testified that plaintiff would be able to perform all of the jobs identified with a sit and stand option and a cane for walking. AR 112-13. However, the vocational expert explained that plaintiff would not be able to perform any of the jobs with a sit and stand option if he also had to use a cane for balance while standing. AR 113. Plaintiff argues that in light of the vocational expert's testimony, the administrative law judge should have considered whether plaintiff required both a sit and stand option and an assistive device for balance.

In support of his argument, plaintiff points to the findings of Drs. Johnson and Anuligo that plaintiff had balance problems (including a positive Romberg test), weakness in his lower extremities and difficulty walking or standing for long periods. However, neither Johnson nor Anuligo assessed a sit and stand limitation to plaintiff or stated that he needed to use an assistive device for balance. In April and October 2014, Dr. Anuligo recommended that plaintiff use a cane or walker for *ambulating*, AR 676, but plaintiff refused it in March 2015. AR 523. In addition, the administrative law judge found that plaintiff did not have consistent gait instability or balance problems, as evidenced by the fact that he displayed a normal gait and no unsteadiness during physical examinations in August 2013 and March 2014. AR 57 (citing AR 418 and 737). Plaintiff does not challenge these findings apart from arguing that his gait and balance fluctuate. However, without further evidence that a sit and stand option and a cane for balance were medically necessary, he cannot show that the administrative law judge's failure to discuss these limitations was reversible error.

C.  Dr. Matthews's Opinion

Contrary to plaintiff's contention, the administrative law judge did consider the report of Dr. Matthews, who diagnosed "pain disorder associated with both psychological factors and a general medical condition (provisional)," "rule out" conversion disorder and "rule out" personality disorder. AR 674. The administrative law judge reasonably concluded from these diagnoses that Dr. Matthews's findings were "indefinite" and did not suggest that plaintiff had severe mental impairments. In fact, Dr. Matthews noted in her report that plaintiff did not have any psychological dysfunction.

To qualify as a medical opinion, a statement must reflect a judgment about the nature and severity of the impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and any physical or mental restrictions. 20 C.F.R. § 404.1527(a)(1); Horr v. Berryhill, 746 Fed. Appx. 16 (7th Cir. 2018). As defendant points out, Dr. Matthews examined plaintiff on one occasion to determine whether he was a good candidate for a spinal cord stimulator, noted his symptoms and test results and diagnosed three possible conditions, two of which she was ruling out. Dr. Matthews did not state any opinion with respect to plaintiff's functional limitations apart from stating that testing "suggested" plaintiff has some difficulty managing routine affairs, a poor memory, concentration problems and an inability to make decisions. However, the administrative law judge explained that there was no other evidence in the longitudinal record to support any significant limitations in these areas, and plaintiff has not cited any evidence that the

administrative law judge failed to consider.  Accordingly, I find that the administrative law judge did not commit reversible error in considering Dr. Matthews's 2016 evaluation of plaintiff.

D.  Off-Task Limitation

Finally, plaintiff argues that the administrative law judge did not lay a proper foundation for the 10-percent off-task limitation that he included in the residual functional capacity assessment.  Lanigan v. Berryhill, 865 F.3d 558, 566 (7th Cir. 2017) (finding administrative law judge failed to build bridge between 10 percent off-task limitation and record as whole).  When making residual functional capacity determinations, SSR 96-8p requires administrative law judges to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  The Court of Appeals for the Seventh Circuit has highlighted the importance of this requirement, holding that an administrative law judge must explain how he or she reaches a particular conclusion on a claimant's limitations.  Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities."); O'Connor-Spinner v. Astrue, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence [of limitations] that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence.").

In this case, plaintiff observes that the administrative law judge did not explain why 10 percent is the appropriate limit for plaintiff as opposed to another limit (such as 5 percent or 15 percent). Plaintiff argues that several federal courts have found reversible error in cases in which the administrative law judge included an unsupported off-task limitation in a residual functional capacity assessment and hypothetical to a vocational expert. E.g., D'Aversa v. Berryhill, 2018 WL 5977919, at *2 (N.D. Ill. Nov. 14, 2018); Oravec v. Colvin, 2015 WL 1486380, at *6 (W.D. Wis. Mar. 31, 2015); Olivarez v. Colvin, 2015 WL 1506084, at *4 (W.D. Wis. Apr. 1, 2015). However, in those cases, the administrative law judges failed to explain how the off-task limitation accounted for the claimants' significant (in most cases, "moderate") limitations in concentration, persistence or pace. Here, the administrative law judge found that plaintiff did not have a severe psychological impairment or any mental limitations.

It is reasonable to infer from the administrative law judge's decision that he included the off-task and unscheduled absence limitations to account for any difficulties that plaintiff's physical impairments may cause him. Moreover, plaintiff does not identify any evidence that the administrative law judge failed to consider or account for in choosing the 10-percent limit. As defendant points out, the limitation is superfluous under the facts in this case because the vocational expert testified that it would have no effect on plaintiff's ability to work. Therefore, the administrative law judge did not commit reversible error in failing to explain expressly why he included a 10-percent limitation.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Gary Madden benefits, is AFFIRMED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 12th day of July, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge